HARLOW AND HATHORN *v.* JOHN M. DYER.

*Pleadings. Evidence.*

The plaintiffs contracted with the defendant to ship to them at Boston a quantity of hay and paid him $500 towards the same, but afterwards as hay had fallen in Boston they requested him to sell what he then had on hand at Salisbury for the best price he could. He did so, and gave the plaintiffs credit therefor. The plaintiffs claimed to recover on a count for money had and received the balance of the $500 which they

claimed to be in the defendant's hands. *Held,* that the aforesaid facts, viz., the sale of the hay under said request and credit of the amount received therefor, were admissible in evidence under the general issue.

ASSUMPSIT upon special and general counts. Plea, general issue, trial by jury, PIERPOINT, J., presiding, and verdict for defendant.

The plaintiffs gave evidence tending to show, that in the spring and summer of 1867, they were engaged in buying hay in Vermont, on joint account. That on the 12th day of May, 1867, they made a contract with defendant to press, deliver and procure to be shipped on the Rutland Railroad cars at West Salisbury, within two weeks from that date, as part of the evidence tended to prove, or in time to reach Boston within two weeks from that date as other evidence tended to prove, from 35 to 40 tons of hay. That at the time of making the contract they paid the defendant $500, on account of it; that only one car load, containing about eight tons, was delivered by the defendant within the time specified; that another car load of about six tons was shipped so as to reach Boston on the 25th day of June, before which time the price of hay had largely fallen in market, and was received and disposed of by plaintiffs under the supposition that it came from another party from whom they were buying hay, and without any notice that it came from defendant; and that no other hay was delivered them by defendant.

The defendant gave evidence tending to show that he did not contract to deliver from 35 to 40 tons of hay, but only so much as remained out of 35 to 40 tons he had on hand, after deducting about 18 tons in a certain barn, which the plaintiffs declined to take as unsuitable for their purpose; that there was no time fixed within which the hay was to be delivered; that the second car load was sent from West Salisbury on the 19th day of June; that having pressed and gathered the remainder of the hay, not included in said two car loads, being about eight tons, ready to be shipped for Boston under his contract, and being about so to send it, Harlow, one of the plaintiffs, [requested him not to send it forward, for the price of hay had declined so much that it could not be sold in Boston to advantage, but to sell it for them in Vermont,

agreeing to pay him for it under the contract the same as if delivered on the cars. To this, the defendant assented, and sold the hay for them accordingly, for the best price he could get, being $20 per ton, and credited plaintiffs the amount received.]

The plaintiffs objected to this evidence in brackets being received for any other purpose than as tending to show what the original contract was.

The plaintiffs denied requesting or authorizing the defendant to sell the hay for them as he claimed, or that they ever received or accepted that hay in any way. It appeared that if defendant was allowed at contract price for the two car loads, and for the hay he claimed to have sold for the plaintiffs at their request, there would be no balance of the $500 remaining in his hands belonging to the plaintiffs, but a balance in his favor. Upon the evidence, the plaintiffs claimed to recover upon the special counts in their declaration. But failing that, they claimed to recover under the general counts a balance remaining in defendant's hands, of the $500 paid him; and that as the pleadings stood, the defendant could not be allowed for the hay he claimed to have sold for them, even if the jury found the facts to be as he claimed. They also claimed and requested the court to charge the jury that the testimony as to the directions by Harlow to defendant to sell the hay, and as to the sale of the hay by the defendant, could only be considered by them in determining what the original contract was.

On this subject, the court told the jury, after proper instructions in regard to it in all other particulars, that in determining under the general counts whether there was any balance in defendant's hands if the contract was found to be as he claimed it, the state of the pleadings constituted no objection to the defendant being allowed for the hay he sold for the plaintiffs at the original contract price, if in other respects he was found entitled to be allowed for it under the instructions of the court.

And that if he seasonably gathered and pressed the hay, and would have shipped it according to the contract existing between the parties but for the plaintiffs' request that he should sell it for them instead of shipping it, and be allowed the contract price, and he did so sell it accordingly, that would be a delivery of the

hay to the plaintiffs to the same effect as if he had actually shipped it.

To the refusal to charge as requested, and the charge as above recited, the plaintiffs excepted.

*Briggs & Ormsbee*, for plaintiffs.

*J. W. Stewart* and *E. J. Phelps*, for defendant.

The opinion of the court was delivered by

PECK, J.    Chap. 33, § 15, Gen. St., does not require defenses admissible under the general issue at common law to be pleaded specially or by way of notice, unless it be "*matter operating to extinguish the right of action which once existed.*" If the evidence objected to by plaintiffs and admitted by the court,—to the effect that Harlow one of the plaintiffs requested the defendant not to send forward the residue of the hay, but to sell it for the plaintiffs in Vermont, agreeing to pay for it under the contract the same as if delivered on the cars; and that the defendant assented to this and sold the hay for them accordingly for the best price he could get, being $20 per ton, and credited the plaintiffs the amount,—went to extinguish an existing right of action in favor of the plaintiffs against the defendant, it was not admissible; but if its effect was to show that no such right of action accrued, it was properly admitted. This must be determined by looking at this evidence in connection with the other evidence in the case. If we look at the evidence on the part of the plaintiff as to the terms of the original contract, and what the plaintiffs' evidence tends to show was done under it, it might perhaps be claimed that a right of action had accrued to the plaintiffs, which the evidence objected to tended to extinguish. But whether this is so or not, is not material, because upon the defendant's evidence as to the terms of the original contract, and what he had done in the performance of it, he had been guilty of no breach of the contract up to or at the time of the new arrangement, which this evidence to which the plaintiffs objected tended to prove; consequently no right of action existed in favor of the plaintiffs against the de-

fendant at that time.   The fact that the defendant had not at that time sent forward hay to the amount of the $500 which the plaintiffs advanced him upon the contract, did not constitute a right of action against the defendant.   He could not be made liable either for the surplus of the $500, or upon the contract, until he should be guilty of a breach of it.   This evidence therefore did not go to prove matter operating to extinguish a right of action then existing, if the other evidence on the part of the defense was true.   This evidence was therefore admissible, as it did not go to prove matter operating to extinguish any right of action which then existed in favor of the plaintiffs, but tended to show that no right of action then or thereafter accrued to the plaintiffs; as, if true, it excused the defendant from forwarding the residue of the hay.   As the jury might find the defendant's version of the contract and his action under it true, it was proper that this additional evidence should be admitted, as, in connection with the other evidence on the part of the defendant, if the jury should find it all true, it would constitute a good defense; not by extinguishing a right of action in favor of the plaintiff which once existed, but by showing that no such right of action ever accrued.

This disposes of the exception taken by the plaintiffs, under the charge to the jury, since the court in that portion of the charge upon which the exception is based gave the same effect to this evidence as already indicated that it was entitled to.

Judgment affirmed.